UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

No. 1:26-cv-02223

**Aldana,**
*Petitioner,*
v.
**Collins, et al.,**
*Respondents.*

## MEMORANDUM OPINION AND ORDER

Anthony Jose Aldana is a native and citizen of Venezuela currently being detained by Respondents pending removal proceedings pursuant to 8 U.S.C. § 1225(b)(2). He filed a petition for writ of habeas corpus demanding his immediate release or an individualized bond hearing. Because his detention is lawful, his petition is denied.

## BACKGROUND

Petitioner last entered the United States on January 18, 2025. Petitioner was paroled into the interior of the United States under discretionary humanitarian parole. Petitioner's humanitarian parole originally extended until January 17, 2027. Petitioner filed an application for asylum. Whether it was timely is disputed. Regardless, Petitioner was taken into federal immigration custody on or about July 7, 2026, following a traffic stop.

On August 12, 2026, Petitioner filed a petition for a writ of habeas corpus contesting his detention and seeking immediate release or an individualized bond hearing. When he filed this petition, Petitioner was detained at the T. Don Hutto Detention Center in Taylor, Texas. The Court ordered

Respondents to show cause why the writ should not be granted. Respondents answered. The Court was subsequently made aware that Petitioner was transferred to the Winn Correctional Center in Winnfield, Louisiana. The Court now addresses the petition.

## LEGAL STANDARD

"[A]bsent suspension, the writ of habeas corpus remains available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. CONST. art. I, § 9, cl. 2). Through 28 U.S.C. § 2241, Congress authorized federal district courts to entertain habeas corpus petitions, including petitions brought by noncitizens such as Petitioner, challenging the lawfulness of their immigration detention. *See Demore v. Kim*, 538 U.S. 510, 516–17 (2003) (confirming section 2241 jurisdiction over a constitutional challenge to immigration detention); *see also Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001). The writ exists to "grant relief from unlawful imprisonment or custody," *Pierre v. United States*, 525 F.2d 933, 935–36 (5th Cir. 1976), and does not reach a challenge to a final order of removal, which Congress has channeled exclusively to the courts of appeals, *see* 8 U.S.C. § 1252(a)(5).

To obtain the writ, a petitioner must be "in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3); *see Orellana v. Kyle*, 65 F.3d 29, 31 (5th Cir. 1995) (per curiam). The petitioner bears the burden of demonstrating that the challenged custody is unlawful, and the Court must "summarily hear and determine the facts, and dispose of the matter as law and justice require." 28 U.S.C. § 2243.

## Analysis

The Court first considers its jurisdiction. "[W]hen the Government moves a habeas petitioner after [he] properly files a petition naming [his] immediate custodian, the District Court [where he originally filed his petition] retains jurisdiction[.]" *Rumsfeld v. Padilla*, 542 U.S. 426, 441 (2004). Petitioner properly filed a petition naming his immediate custodian before he was transferred out of the district. This Court, therefore, retains jurisdiction over Petitioner's petition despite his transfer outside the district.

Petitioner asserts that his pre-removal detention is unlawful because it violates due process. His arguments, however, fail. Petitioner is properly detained pursuant to section 1225(b)(2) because he is an applicant for admission. Title 8 section 1182(d)(5)(A) gives the Secretary of Homeland Security discretion to temporarily parole aliens into the United States "on a case-by-case basis for urgent humanitarian reasons or significant public benefit[.]" 8 U.S.C. § 1182(d)(5)(A). "[B]ut such parole of such alien shall not be regarded as an admission of the alien[.]" *Id.*; *see also Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018) (describing section 1182(d)(5)(A)). And "when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." 8 U.S.C. § 1182(d)(5)(A).

Section 1182(d)(5)(A) parole automatically terminates without written notice "(i) upon the departure from the United States of the alien, or, (ii) if not departed, at the expiration of the time for which parole was authorized[.]" 8 C.F.R. § 212.5(e)(1). In other cases, when, in the opinion of the Secretary of Homeland Security or one of his designees, the

purposes of parole have been served or humanitarian reasons or public benefit no longer warrant the alien's continued presence in the United States, "parole shall be terminated upon written notice to the alien and he or she shall be restored to the status that he or she had at the time of parole." *Id.* § 212.5(e)(2)(i). "When a charging document is served on the alien, the charging document will constitute written notice of termination of parole, unless otherwise specified." *Id.* "A 'charging document' is defined in 8 C.F.R. § 1003.13 (2021) as 'the written instrument which initiates a proceeding before an Immigration Judge' and may include, among other documents, a[] [notice to appear]." *Matter of Arambula-Bravo*, 28 I. & N. Dec. 388, 392–93 (BIA 2021) (quoting 8 C.F.R. § 1003.13 (2021)), *pet. denied sub nom. Arambula-Bravo v. Garland*, No. 21-826, 2024 WL 1299986 (9th Cir. Mar. 27, 2024). A notice to appear is therefore "sufficient to terminate the [petitioner's] grant of parole under 8 C.F.R. § 212.5(e)(2)(i)." *Id.* at 393 (holding even a deficient notice to appear was sufficient to terminate the grant of parole). "[T]ermination of parole is effective upon service of the notice of termination, [and] no hearing is required." *Id.* at 394–95 (citing 8 C.F.R. § 212.5(e)(2)(i) and *Matter of Castillo-Padilla*, 25 I. & N. Dec. 257, 261 (BIA 2010)).

Petitioner was temporarily paroled into the United States on January 18, 2025. Petitioner's I-94 form states his class of admission was "DT," meaning he was admitted through non-categorical humanitarian parole pursuant to section 1182(d)(5)(A).[1] He was later served with a notice to

---

[1] *See* U.S. CITIZENSHIP & IMMIGR. SERVS., *FAQs on the Effect of Changes to Parole and Temporary Protected Status (TPS) for SAVE Agencies*, https://www.uscis.gov/save/current-user-agencies/guidance/faqs-on-the-effect-of-changes-to-parole-and-temporary-protected-status-tps-for-save-agencies [https://perma.cc/UWA7-E73H] (last visited September 28, 2026) (under "Non-Categorical Parole" heading, "What does 'Non-Categorical

appear. Petitioner's parole was therefore revoked, *see Matter of Arambula-Bravo*, 28 I. & N. Dec. at 393, and his status was "restored to the status that he . . . had at the time of parole[,]" 8 C.F.R. § 212.5(e)(2)(i). *See also Cardoso-Reyes v. Mullin*, No. 1:26-cv-01600, 2026 WL 2342564, at *2 (W.D. Tex. July 24, 2026) (holding that Petitioner's previous release on parole "does not alter his legal status as an applicant for admission subject to section 1225(b)").

As an alien subject to section 1225(b)(2), Petitioner's detention without a bond hearing does not violate due process. Congress expressly authorized detention of an alien "for a [removal] proceeding" without an individualized bond hearing. 8 U.S.C. § 1225(b)(2). And it is well-established that such "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process." *Demore*, 538 U.S. at 523. Neither the statutory text nor the Due Process Clause therefore requires granting the writ, and none of Petitioner's ancillary arguments require it either.[2] For the reasons set forth

---

Parole' mean?") ("Aliens who are outside of the United States may request to be paroled into the United States based on urgent humanitarian reasons or a significant public benefit. These aliens are not paroled into the United States under a categorical parole program or process. Often, the Class of Admission (COA) for these aliens is 'DT' though other parole related COAs may have been used."); *see also* 8 U.S.C. § 1182(d)(5)(A) (permitting parole for "urgent humanitarian reasons or significant public benefit").

[2] The Fifth Circuit's panel decision in *Rodriguez v. Ortega*, 180 F.4th 702 (5th Cir.), *vacated on reh'g en banc*, 181 F.4th 608 (5th Cir. 2026), was vacated and rehearing en banc was granted on July 10, 2026, *see Rodriguez v. Ortega*, 181 F.4th 608, 609 (5th Cir. 2026) (en banc) (per curiam). "[T]hus the opinion is not binding precedent[,]" *Munn v. City of Ocean Springs*,763 F.3d 437, 441 n.2 (5th Cir. 2014), and the Court is not persuaded by its reasoning. For the reasons set forth in *Esquivel v. Mullin*, No. 1:26-cv-02000, 2026 WL 2322821 (W.D. Tex. Aug. 10, 2026), the subsequent stay, *Rodriguez v. Ortega*, 183 F.4th 387, 388 (5th Cir. July 21, 2026) (en banc) (per curiam), does not preclude this Court from adjudicating or entering final judgment in this case.

in Parts I–II of this Court's decision in *Tapia v. Mullin*, 834 F. Supp. 3d 718 (W.D. Tex. 2026), the Court denies the petition.

* * *

The petition for writ of habeas corpus is denied.

The Clerk is directed to serve this Order electronically on the United States Attorney's Office for the Western District of Texas.

*So ordered by the Court on September 29, 2026.*

ANDREW DAVIS
United States District Judge